MICHAEL ALLAN BAILEY,                )
                                     )
          Plaintiff                )
                                     )
v.                                   )     No. 2:17-cv-00080-DBH
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
          Defendant                )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a parking lot attendant and, in the alternative, performing other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in determining his credibility and in erroneously giving greater weight to the opinion of an agency nonexamining physician than to those of examining and treating physicians. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 7-13. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

through March 31, 2010, Finding 1, Record at 23; that, through his date last insured, he had severe impairments of diabetes mellitus, degenerative disc disease, and a history of coronary artery disease, Finding 3, *id.* at 24; that, through his date last insured, he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except that he could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could occasionally stoop, kneel, crouch, and crawl, and should not work with hazardous machinery or near unprotected heights, Finding 5, *id.* at 26; that, through his date last insured, he was capable of performing past relevant work as a parking lot attendant, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 30; that, in the alternative, considering his age (52 years old, defined as an individual closely approaching retirement age, on his alleged disability onset date, January 1, 2002), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform through his date last insured, Finding 6, *id.* at 30-31; and that he, therefore, had not been disabled from January 1, 2002, his alleged onset date of disability, through March 31, 2010, his date last insured, Finding 7, *id.* at 32. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ'S Assessment of the Plaintiff's Credibility

The plaintiff challenges the ALJ's determination of his credibility, contending that it fails to meet the standards of Social Security Ruling 16-3p ("SSR 16-3p"), which took effect in March 2016, superseding Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 7-10. He argues, in the alternative, that, if SSR 96-7p applies, the credibility determination is flawed for the same reasons pursuant to that standard. *See id*. at 9-10.

Contemporaneous with the filing of the plaintiff's statement of errors, this court held that SSR 16-3p is not retroactive, *see Coskery v. Berryhill*, No. 1:16-cv-00477-NT, 2017 WL 2417847, at *2-4 (D. Me. June 4, 2017) (rec. dec. *aff'd* July 7, 2017), and the plaintiff's counsel offered no reason at oral argument to revisit that ruling. Accordingly, SSR 96-7p, which applied as of the

date of the ALJ's decision, October 27, 2015, *see* Record at 32, supplies the standard pursuant to which the supportability of the ALJ's credibility determination must be reviewed.

SSR 96-7p provides, in relevant part, that a determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 133. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). I find no reason to disturb that determination in this case.

The ALJ deemed "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not entirely credible[,]" finding, as of his date last insured, that (i) "the objective medical evidence [did] not establish that [he] [was] as limited as alleged[,] (ii) treatment records following back surgery in 1998, a heart attack in 2000, and an episode of diabetic ketoacidosis in 2005 indicated that those conditions were "stable" or required "limited" or "conservative" treatment, and the plaintiff was noncompliant with recommended diabetes treatment, and (iii) "[t]he combination of the [plaintiff's] work activity and hobbies suggest[ed] that he retain[ed] sufficient strength and endurance to sustain the limited demands of sedentary work." Record at 27-29.

The plaintiff argues that the first two rationales are insufficient, standing alone, to constitute substantial evidence in support of the ALJ's credibility finding, asserting that his activities were not necessarily inconsistent with his complaints of disabling pain. *See* Statement

4

of Errors at 10. He contends that the ALJ erred in relying on his activities of daily living because (i) those activities did not reflect an ability to engage in sustained full-time employment, and (ii) the ALJ misconstrued a 2003 report of a psychological evaluation as indicating that he restricted his activities because of concern over surveillance. *See id.*

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16), at 2-6, the ALJ's credibility determination withstands these challenges.

### 1. The Plaintiff's Medical Records

The plaintiff correctly notes that an ALJ may not reject a claimant's subjective allegations solely on the basis that they are unsupported by objective medical evidence. *See* Statement of Errors at 9-10; *see also, e.g.*, 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

However, that is not what happened here. As noted above, the ALJ articulated several bases for her finding. She did not err in relying in part on inconsistency between the plaintiff's allegations and the objective medical evidence of record. *See, e.g., id.* (describing objective medical evidence as "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work"); *Flood v. Colvin*, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) (ALJ supportably based credibility determination on "(i) Claimant's history of conservative treatment; (ii) improvement of symptoms with treatment; (iii) a lack of objective

5

medical findings supporting Claimant's allegations of disabling restrictions; and (iv) the extent of Claimant's daily activities").[2]

### 2. The Plaintiff's Treatment

In a similar vein, the plaintiff contends that an ALJ may not reject a claimant's subjective allegations solely on the basis of lack of treatment or conservative treatment. *See* Statement of Errors at 10. Again, that did not happen here. The ALJ properly relied in part on the plaintiff's conservative treatment and failure to follow a prescribed diet (to the extent feasible given his limited budget). *See* Record at 27-29; *Flood*, 2016 WL 6500641, at *1; *see also, e.g.*, SSR 96-7p at 139 (a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").[3]

### 3. The Plaintiff's Activities of Daily Living

The plaintiff finally challenges the ALJ's reliance on his activities of daily living in deeming his allegations less than fully credible. *See* Statement of Errors at 10.

The ALJ stated, in relevant part:

[T]he [plaintiff] worked during the alleged period of disability as a self-employed landscaper. [He] confirmed that he mowed lawns during the summer. He asserted that he would only perform this work for a couple of hours per day before experiencing aggravat[ing] pain. He also stated that he lost money every year because he needed to maintain his equipment. Nevertheless, [his] ability to sustain demanding physical activity such as landscaping on a regular basis suggests that he retained significant physical skills. Although [he] suggested that he lost money on the business each year, he remained able to stay in business and earn sufficient

---

[2] The commissioner also asserts that the ALJ's finding of inconsistency between the plaintiff's subjective allegations and the objective medical evidence was supported by substantial evidence, *see* Opposition at 3-4; however, the plaintiff does not contend otherwise, *see* Statement of Errors at 9-10.
[3] The commissioner also asserts that the ALJ's findings regarding the conservative nature of the plaintiff's treatment and his noncompliance with his diet were supported by substantial evidence, *see* Opposition at 4-5; however, the plaintiff does not contend otherwise, *see* Statement of Errors at 9-10.

> revenue to justify continuing to work. The record also refers to surveillance recordings describing activities . . . such as hunting and farming. The [plaintiff] acknowledged that he fishes, spends time at a park that he owns, gardens, and performs light mechanical work and woodworking. Notably, the record indicates that [he] restricted his personal activities because of surveillance concerns rather than physical difficulties. The combination of [his] work activity and hobbies suggest that he retains sufficient strength and endurance to sustain the limited demands of sedentary work.

*Id*. at 29 (citations omitted).

The plaintiff complains that "[n]one of the activities cited by the ALJ – working for a couple hours per day as a self-employed landscaper and occasionally engaging in activities such as hunting, gardening, and yard work – necessarily indicate that [his] testimony regarding his symptoms caused by chronic pain . . . should have been disregarded." Statement of Errors at 10. He adds that the ALJ misconstrued a 2003 psychological evaluation report as evidence that he "restricted his personal activities because of surveillance concerns rather than physical difficulties[.]" *Id*. (internal quotation marks omitted). I find no error.

As the commissioner points out, *see* Opposition at 5, "while a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations[,]" *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted). The ALJ supportably deemed the wide array of activities in which the plaintiff engaged, including landscaping, hunting, yard work, light mechanical work, and woodworking, inconsistent with his allegations of disabling limitations.

Beyond this, the ALJ pointed to evidence in the form of 2003 surveillance videotapes indicating that the plaintiff was able to perform this array of activities on a more sustained basis than he claimed. After viewing those videotapes on September 4, 2003, independent medical

examiner Peter Esponnette, M.D., described them as revealing "[a]ctivities . . . greatly in excess of [the plaintiff's] reports of activity tolerance at the time of the IME [independent medical examination]" that Dr. Esponnette had performed on July 25, 2003. Record at 542. Dr. Esponnette noted that they showed "an extremely active individual doing activities for long periods of time on any single day and over the course of some consecutive days." *Id*. (internal quotation marks omitted).

The ALJ also referenced the following passage from the report of a second independent medical examiner, Carlyle B. Voss, M.D., in 2003:

> [The plaintiff] is very affected by surveillance activities. He states he restricts his activities substantially because of concerns about further surveillance. He has reduced hunting activity in part related to those concerns. He also enjoys fishing, but restricted those activities because of fears of surveillance. He has a 16 foot boat with a 45 horse motor which he has not put in the water to go striper fishing for 2 years because of concerns of surveillance.

*Id*. at 547.

The plaintiff contends that the ALJ misconstrued this passage as meaning that he restricted all of his activities solely because of surveillance concerns. *See* Statement of Errors at 10. At oral argument, his counsel argued that the more accurate reading is that he limited his physical activities in all of these respects due to his physical limitations and then further restricted some activities at that time due to surveillance concerns.

Counsel for the commissioner acknowledged that the above-quoted passage reflects that the plaintiff restricted his hunting activity only in part because of surveillance concerns. However, he argued, and the record reflects, that the ALJ ultimately did not attribute all of the plaintiff's activity restrictions to surveillance concerns. *See, e.g*., Record at 29 (finding that plaintiff retained "sufficient strength and endurance to sustain the limited demands of sedentary work").

I find no reason to disturb the ALJ's credibility determination.

8

## B. The ALJ's Consideration of the Opinion Evidence of Record

The plaintiff also argues that the ALJ erred in failing to provide "good reasons" for giving greater weight to an August 29, 2014, opinion of agency nonexamining consultant Robert Hayes, D.O., than to the opinions of examining and treating sources. Statement of Errors at 11-13. I find no error.

### 1. Treating and Examining Physicians

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[4] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) ("SSR 96-8p"), at 149 (an ALJ may reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. § 404.1527(c).

On the other hand, "[a] onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons." *Bowie v. Colvin,* No. 2:12-cv-205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (rec. dec. *aff'd* May 7, 2013) (citation and internal quotation marks omitted).

The plaintiff complains that the ALJ "did not specifically discuss" (i) a January 16, 2002, report of a comprehensive medical evaluation by John Pier, M.D., (ii) IME reports dated April 26, 2003, and October 16, 2003, by Robert N. Phelps, Jr., M.D., (iii) the July 25, 2003, IME report of Dr. Esponnette, and (iv) an October 15, 2003, opinion letter of treating physician Carl S. DeMars, M.D. Statement of Errors at 11. The Pier, Phelps, and Esponnette reports were generated in connection with a workers' compensation claim stemming from the plaintiff's work-related back injury in 1997. *See* Record at 27-28, 543-44.

Dr. Pier deemed the plaintiff capable of working 30 to 40 hours per week in a job at the sedentary exertional level but only 20 to 30 hours per week at the light or light/medium exertional level. *See id* at 451-52. Dr. Phelps found that he was at maximum medical improvement, concluding, both before and after viewing the surveillance videotapes, that he was capable of working 20 hours per week, but not full-time, at a reduced range of the light exertional level. *See id*. at 493-95, 518-19. Dr. Esponnette found on July 25, 2003, that the plaintiff was capable of performing a reduced range of part-time work (four hours per day) at the sedentary to light exertional level, *see id*. at 1100, but amended his opinion after reviewing the surveillance videotapes, *see id*. at 542-43. In an October 15, 2003, letter, Dr. DeMars concurred with the limitations assessed by Dr. Phelps in April 2003, noting that his own "list of limitations written on September 26th [was] very similar." *Id*. at 492. In the referenced September 26, 2003, treatment

note, Dr. DeMars recommended that the plaintiff work four hours a day with frequent breaks to stretch, stand, and sit, not pull or lift more than 10 pounds occasionally, and never stoop, bend, or twist. *See id.* at 1114.

The record also contained an undated letter from Dr. DeMars stating that the plaintiff had "severe degenerative spinal disease and require[d] high dose narcotics on a daily basis to treat his pain[,]" which had "made him unable to engage in gainful employment." *Id.* at 1101.

The ALJ explained that she gave the undated DeMars letter "no weight" because it was undated, as a result of which it was unclear whether it applied to the period before the plaintiff's date last insured, and because it concerned an issue reserved to the commissioner (disability) and was "not a proper medical opinion." *Id.* at 29-30 (citation omitted). She noted that the record was devoid of any "recent opinion from a treating source describing specific functional limitations." *Id.* at 29.

She further stated, in relevant part:

> Examination and treatment reports from the early 2000s contain conflicting assessments from the [plaintiff's] treating physician and several independent medical examiners regarding the [plaintiff's] work capacity for his worker's compensation claim. These examination reports are complicated by the presence of video recordings suggesting that the [plaintiff] is engaging in physically demanding activities including gardening, hunting, picking up trash, and operating a tractor. Although the conclusions of these examinations are not wholly consistent, the physical examinations indicate that the [plaintiff] is neurologically intact with normal gait and moderate restriction of range of motion of the lumbar spine. They also suggest that the [plaintiff] retains a significant work capacity in the range of sedentary to light work. Although there are some statements suggesting that the [plaintiff] was limited to a part-time work capacity, they also indicated that [he] was able to perform his current job as [a] parking lot attendant.
>
> Considered as a whole, these examination reports are accorded modest evidentiary weight. Despite the different assessments regarding the reliability of the video recording evidence in assessing the [plaintiff's] functional abilities, they are generally consistent in the physical examination reports describing intact neurological functioning without substantial deficits in strength, mobility, and motor skills. These records are also remote in time and do not describe the

11

> [plaintiff's] functional abilities as of the date last insured. Finally, even the reports that are more skeptical of the [plaintiff's] functional abilities conclude that he is able to work in some capacity. Therefore, the undersigned finds that these reports are generally consistent with most of the other evidence of record and support the undersigned's conclusion that the [plaintiff] was able to perform a limited range of light work at the date last insured.

*Id.* at 28 (citations omitted).

The plaintiff contends that the ALJ either ignored or misrepresented substantial opinion evidence of record in:

1. Predicating her finding that he was capable of full-time work in part on his performance of the parking lot attendant job, despite evidence (within the cited opinions and in the form of his own testimony) that this work was performed only part time, *see* Statement of Errors at 12-13;

2. Failing to discuss the specific limitations assessed by Drs. DeMars, Phelps, Esponnette, and Pier, all of whom assessed greater limitations than did Dr. Hayes or the ALJ, *see id.*;

3. Erroneously deeming those opinions entitled to only modest weight on the basis that they were "remote in time" and did not describe the plaintiff's functional limitations as of his date last insured, when they were provided within two years of his alleged January 1, 2002, onset date of disability, *see id.* at 13; and

4. Discussing a later undated, non-specific opinion from Dr. DeMars but failing to specifically address his earlier opinion assessing functional limitations, *see id.*

He contends that these errors were not harmless because the examining physicians, at best, assessed limitations that would allow for full-time, gainful employment only at the sedentary level, which would have precluded both his past relevant work as a parking lot attendant and the performance of any other work. *See id.*

12

I find no error.

As a threshold matter, as the commissioner observes, *see* Opposition at 8, the ALJ did not fail to address any of the opinions at issue. She referenced each by exhibit number. *See* Record at 28 (citing Exh. 11F, Dr. Pier's January 16, 2002, report, *see id*. at 447-52; Exh. 15F, containing both of the Phelps reports, *see id*. at 493-538; Exh. 24F, Dr. Esponnette's July 25, 2003, report, *see id*. at 1094-1100; & Exh. 14F, containing Dr. DeMars' October 15, 2003, opinion letter, *see id*. at 492). She did not detail the limitations assessed by each physician, but she did not need to. She summarized their material and sometimes conflicting conclusions and, as the commissioner persuasively argues, *see* Opposition at 6-15, accorded their opinions, collectively, modest weight for four good reasons, including the plaintiff's performance of the parking lot attendant job and the opinions' remoteness in time from his date last insured. In so doing, she met or exceeded applicable standards for the weighing of the opinions of examining and treating physicians.

### a. Surveillance Videotape Evidence

First, the ALJ explained that the examination reports were "complicated by the presence of video recordings suggesting that the [plaintiff] [was] engaging in physically demanding activities including gardening, hunting, picking up trash, and operating a tractor." Record at 28 (citations omitted).

While Dr. Phelps considered this evidence congruent with his prior report, *see id*. at 518, 544, Dr. Esponnette did not, concluding that the plaintiff had "substantially more capacity than [he had] reported[,]" *id*. at 544. Dr. Esponnette "amend[ed] his conclusions[,]" determining that the plaintiff did not have failed low back syndrome and had demonstrated "a wonderful activity capacity[,]" although he possibly, and even likely, had "some degree of back discomfort." *Id*. at 542 (internal quotation marks omitted). He changed his diagnoses to low back pain syndrome,

13

symptom magnification severe, rule-out malingering, use of narcotics, diabetes, coronary artery disease, and bilateral bunions, and amended his assessed work restrictions. *See id*. at 542-43.

Dr. Voss noted that he also had viewed the videotapes, which he described as showing the plaintiff "actively working in his yard and Bailey Park" and using "a riding mower, rototiller, weedwacker, shovel, and vehicle." *Id*. at 543. Finally, Dr. DeMars noted:

> [The plaintiff] was seen on videotape this past summer doing a variety of garden activities. [He] has stated to me in the past that he does some of this gardening and states he's been upfront with this in regards to telling his employer that he also works in his garden . . . [and] relates to me that he uses his garden to help feed his family even though his back pain is exacerbated by this work.

*Id.* at 492.

"While a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities." *Anderson v. Astrue*, No. 1:11-cv-109-DBH, 2012 WL 283018, at *5 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 17, 2012) (citations omitted). When a claimant is alleged to have engaged in strenuous activities, this maxim has particular force. *See, e.g., Roberge v. Colvin*, No. 2:13-cv-289-GZS, 2014 WL 3548985, at *7 (D. Me. July 17, 2014) (ALJ properly relied on claimant's activities in resolving conflicts in the opinion evidence in favor of a finding of greater capacity; claimant "was not merely engaging in normal household daily activities such as cooking and cleaning but, rather, undertaking such strenuous activities as roofing, manhandling tires, and using a chainsaw").

The surveillance videotape evidence, which even one examining source, Dr. Esponnette, felt undermined his prior evaluation, was a reasonable basis on which to decline to accord more

14

than modest weight to the opinions at issue, particularly in view of the ALJ's further finding that, throughout the relevant period, the plaintiff retained the "ability to sustain demanding physical activity such as landscaping on a regular basis[.]" *Id*. at 29.[5]

### b. Inconsistencies Between Treatment Notes and Opinions

The ALJ next noted that, while the conclusions of examining physicians were "not wholly consistent," their objective findings on examination generally were. *Id*. at 28. She noted that "the physical examinations indicate[d] that the [plaintiff] [was] neurologically intact with normal gait and moderate restriction of range of motion of the lumbar spine" and "without substantial deficits in strength, mobility, and motor skills." *Id*. The plaintiff does not challenge the ALJ's characterization of these findings. *See* Statement of Errors at 11-13. The ALJ concluded that these findings also suggested that the plaintiff "retain[ed] a significant work capacity in the range of sedentary to light work." Record at 28.

Discrepancies between a treating or examining source's findings on examination and conclusions regarding a claimant's functional capacity constitute a valid basis on which to accord those conclusions less weight. *See, e.g., Alazawy v. Colvin*, No. 2:16-cv-00240-JHR, 2016 WL 7441623, at *7 (D. Me. Dec. 26, 2016) (inconsistency between a treating physician's own treatment notes and opinions "qualifies as a 'good reason' for assigning [those opinions] little weight") (citation omitted). The ALJ supportably found that the relatively benign findings in this case suggested that the plaintiff could do more than found by treating and examining physicians.

---

[5] The commissioner points to the following, *see* Opposition at 9-10: a September 2004 report that the plaintiff worked with a grinder, *see* Record at 575, an October 2004 report that he was "doing odd jobs here and there[,]" *id.* at 594, a December 2004 medical progress note stating that he was able to work around the house, *see id.* at 803, a July 2006 medical progress note stating that he mowed lawns and was "[p]hysically quite active[,]" *id.* at 777, an October 2007 medical progress note stating that "his summer job is taking care of lawns so has been using weedwacker quite a bit[,]" *id.* at 763, a May 2008 medical progress note stating that, despite his chronic lower back pain, the plaintiff was "able to work around the house – cuts lawns in summer[,]" *id.* at 750, and the plaintiff's own testimony at hearing that he had recently mowed his neighbor's lawn, *see id.* at 44, as well as the grass at a family park, *see id.* at 51.

15

### c. Remoteness of Opinions

The ALJ next noted that the opinions at issue were "remote in time and d[id] not describe the [plaintiff's] functional abilities as of the date last insured." Record at 28. The plaintiff points out that these opinions were rendered in 2002 and 2003, during the alleged disability period. *See* Statement of Errors at 13. However, the fact that a medical opinion does not reflect a claimant's symptoms over the entirety of the relevant period is a reasonable basis on which to discount it. *See, e.g., Hatt v. Soc. Sec. Admin. Comm'r*, No. 1:13-cv-00335-NT, 2014 WL 4411600, at *2-3 (D. Me. Sept. 5, 2014) (claimant demonstrated no error in handling of agency nonexamining consultant's opinion given partial weight on basis that it did not reflect her symptoms over the entire relevant period). Accordingly, the ALJ did not err in assigning the opinions at issue only modest weight in part on this basis.

### d. Plaintiff's Work as a Parking Attendant

The ALJ finally noted that, "[a]lthough there are some statements suggesting that the [plaintiff] was limited to a part-time work capacity, they also indicated that the [plaintiff] was able to perform his current job as [a] parking lot attendant." Record at 28 (citations omitted). The plaintiff contends that, in so stating, the ALJ failed to consider that he engaged in this work only on a part-time basis. *See* Statement of Errors at 12. I find no error.

As the commissioner observes, *see* Opposition at 15, it is not clear that the ALJ meant to indicate that the plaintiff was performing his parking lot job on a full-time basis. Her statement reasonably can be read to mean that, while treating and examining sources had indicated that the plaintiff could work only part-time, they had also noted that he had no difficulty performing his part-time job as a parking lot attendant. Indeed, in support of this finding, the ALJ cited passages from the 2002 report of Dr. Pier, both of the Phelps reports, and the July 25, 2003, report of Dr.

16

Esponnette. *See* Record at 28 (citing Exh. 11F at 5-6, Exh. 15F at 2-3, 26, & Exh. 24F at 8). As discussed above, all of those examining physicians deemed the plaintiff capable of at least part-time work in a sedentary to light job, with Dr. Pier going so far as to state that he expected that the plaintiff would have a work capacity of between 30 to 40 hours a week as a parking lot attendant or in another sedentary duty position. *See id*. at 451.

The ALJ reasonably concluded that "even the reports that are more skeptical of the [plaintiff's] functional abilities conclude that he is able to work in some capacity" but rejected their opinions to the extent they suggested that he could work only part-time, which she found incongruous with both the objective medical evidence and his wide array of activities. *Id.* at 28. Indeed, an opinion that a claimant can work only part-time implicates the overarching question of whether a claimant is disabled, an issue reserved to the commissioner with respect to which even opinions of treating physicians are not entitled to controlling weight or special significance. *See, e.g.*, 20 C.F.R. § 404.1527(d)(1), (3); *Gallant v. Astrue*, No. 2:11-cv-421-NT, 2012 WL 5267541, at *2 (D. Me. Sept. 28, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("[C]ontrolling weight can never be given to opinions on issues reserved to the commissioner, such as whether a claimant . . . is capable of working only part-time.").

### 2. Agency Nonexamining Physician

The plaintiff finally argues that the ALJ erred in attributing great weight to the opinion of Dr. Hayes, who did not have the benefit of review of the full record, including the opinions of Drs. Pier, Phelps, DeMars, and Esponnette. *See* Statement of Errors at 11. I find no error.

In an August 29, 2014, opinion, Dr. Hayes indicated that, as of the plaintiff's date last insured, he was capable of lifting/carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours in an eight-hour workday with normal breaks, and

17

sitting for about six hours in an eight-hour workday with normal breaks. *See* Record at 87. He indicated that the plaintiff could only occasionally climb, stoop, kneel, crouch, or crawl and needed to avoid uneven surfaces and unprotected heights due to back pain and commercial driving or operation of hazardous machines due to poorly controlled diabetes. *See id*. at 88-89. As the plaintiff notes, *see* Statement of Errors at 11, Dr. Hayes stated that there was "no indication that there [was] medical or other opinion evidence[,]" Record at 87.[6]

The ALJ deemed the Hayes opinion "consistent with and well-supported by the objective medical evidence" and "not contradicted by the evidence received at the hearing level," as a result of which it was "entitled to great weight." *Id*. at 29.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted).

The commissioner argues that, in this case, the ALJ supportably determined that the Hayes opinion was not undermined by evidence received at the hearing level, which included the Pier, Phelps, DeMars, and Esponnette opinions. *See* Opposition at 13. As the commissioner notes, *see id*., an ALJ may properly rely on the opinion of a nonexamining consultant who has not had the opportunity to review the full medical record so long as the evidence unseen by that consultant does not call his or her opinion into question, *see, e.g., Bowie v. Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913, at *3 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013). In turn, "While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence

---

[6] The plaintiff further contends that the Hayes opinion indicates that "only limited sources of medical evidence were available at the time of his review[.]" Statement of Errors at 11. However, Dr. Hayes did not state that he had insufficient evidence to formulate his RFC opinion. *See* Record at 87-88.

18

unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia*, judging whether later submitted evidence is material[.]" *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec. *aff'd* Feb. 22, 2011) (citations omitted).

The ALJ did so here. For the reasons discussed above, she supportably accorded modest weight to the DeMars, Pier, Phelps, and Esponnette opinions to the extent that they supported the conclusion that the plaintiff "retain[ed] a significant work capacity in the range of sedentary to light work." Record at 28. That conclusion, in turn, was consistent with that of Dr. Hayes. Accordingly, the fact that Dr. Hayes did not see the DeMars, Pier, Phelps, and Esponnette opinions did not call his opinion into question.

Finally, as the commissioner notes, *see* Opposition at 14, although the DeMars, Pier, Phelps, and Esponnette opinions predated the Hayes opinion, the plaintiff did not provide them until after Dr. Hayes had completed his review. This court has stated that when a claimant chooses the time in the disability determination process to present the opinion of a treating or examining source, he or she "should not be able to obtain remand of an unfavorable decision by an [ALJ] merely by waiting until the state-agency reports have been submitted to submit a medical source statement contesting the conclusions in those reports." *Parker v. Colvin*, Civil No. 2:13-cv-286-DBH, 2014 WL 3533323, at *4 (D. Me. July 15, 2014). That is true here.[7]

---

[7] The commissioner further argued that, although the ALJ did not mention it, her RFC determination was supported by a 2007 opinion of agency nonexamining consultant Paul Stucki, M.D., who considered but rejected the opinions of Drs. DeMars and Phelps. *See* Opposition at 12-14; Record at 657-63. During rebuttal at oral argument, the plaintiff's counsel contended that reliance on the Stucki opinion was foreclosed by the so-called *Chenery* doctrine. *See, e.g., Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("Pursuant to the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker.") (citations and internal punctuation omitted). The plaintiff's counsel arguably waived this point by mentioning it for the first time during rebuttal argument. However, because I conclude that the ALJ did not err in relying on the Hayes opinion, I need not consider whether reliance on the Stucki opinion was appropriate.

19

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of December, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge